# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TRINITY MORTGAGE COMPANIES, INC.,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 09-CV-551-TCK-FHM |
| **DAVID DREYER, and DREYER AND ASSOCIATES, P.C.,** | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 44) and Defendants' Motion for Summary Judgment (Doc. 47).

**I.  Background**

During its operation, Plaintiff Trinity Mortgage Companies, Inc. ("Trinity") was engaged in the mortgage brokerage business, had its primary place of business in Blue Springs, Missouri, and was solely owned by Shawn Cremeen ("Cremeen"). Further, Trinity had a franchise in Tulsa, Oklahoma known as 1st Class Mortgage. Dennis Junker ("Junker") and Richard Gheisar ("Gheisar") were the owners of 1st Class Mortgage. In April 2007, Junker filed suit against Gheisar, 1st Class Mortgage, and Trinity in Tulsa County District Court, alleging claims for breach of contract, fraud, defamation, and conversion and seeking compensatory damages, attorneys' fees, and punitive damages ("underlying lawsuit"). Steve Capron ("Capron") represented Junker in the underlying lawsuit, and David Dreyer ("Dreyer") and his firm, David Dreyer and Associates, P.C. (collectively "Defendants"), represented Trinity between May 2007 and April 2008. Defendants did not have a written contract with Trinity.

In October 2007, during the pendency of the underlying lawsuit, Trinity entered into an Asset Acquisition Agreement with Community Capital Mortgage Company whereby Trinity sold virtually all of its assets. Cremeen testified that Trinity closed its doors and ceased doing business around January 2008. On January 3, 2008, the court in the underlying lawsuit conducted a hearing on a motion for default judgment that had been filed against Trinity due to Trinity's failure to file an Answer in response to Junker's Petition. At the hearing, Dreyer did not object to default judgment on behalf of Trinity, and the court granted judgment against Trinity in the amount of $71,350.00. However, a Journal Entry of Judgment on the default judgment was not entered at that time, and the court deferred for later determination the issue of whether and in what amount punitive damages should be awarded. On April 22, 2008, Robinett & Murphy, a law firm in Tulsa, Oklahoma, entered an appearance for Trinity in the underlying lawsuit, replacing Dreyer. Robinett & Murphy filed a motion to vacate the default judgment on behalf of Trinity, but said motion was denied by the court. Two months later, on June 24, 2008, the Journal Entry of Judgment against Trinity was entered, awarding $71,350.00 in actual damages to Junker. Trinity closed its last remaining bank account on September 30, 2008.

On October 17, 2008, Robinett & Murphy filed a motion to withdraw as counsel for Trinity in the underlying lawsuit, which was granted by the court on October 21, 2008. Thereafter, on October 24, 2008, Cremeen, Capron, and Junker conducted what they have described to this Court as a "mediation," wherein a settlement agreement was reached as to the underlying lawsuit ("Settlement Agreement"). The Settlement Agreement, which was drafted by Capron, states as follows.

3. Trinity hereby assigns a 50% interest in all stock in Trinity to Junker, and will undertake any necessary paperwork required to accomplish that stock transfer. Despite being a 50% owner of Trinity, Junker will only have authority to vote on corporate matters or to control decisions pertaining to the pursuit of litigation which is contemplated against David Dreyer (and, potentially against others) who have caused Trinity to become liable to Junker in the [underlying lawsuit]. On those matters, including choice of counsel for Trinity, Junker will have sole decision-making authority. All other corporate decisions will be made by Cremeen as the only other shareholder, officer and director of Trinity. Junker neither assumes any pending liability for Trinity nor ratifies any actions taken by Trinity which gave rise to any liability.

4. Though Trinity denies that it should have been held liable to Junker in the [underlying lawsuit], the circumstances are such that neither the law nor the facts of this case will help Trinity escape substantial liability due solely to the malfeasance of David Dreyer. Trinity has been victimized by the actions of David Dreyer who has placed Trinity in a position of having a substantial judgment taken against it by default (which the trial court refused to vacate), and of now facing a likely award of substantial attorneys' fees, a potential award of punitive damage [sic], and of having the corporate veil pierced. For these reasons, Trinity agrees to confess a final judgment in favor of Junker in the amount of $150,000. Trinity recognizes that the judgment ultimately awarded could be higher or lower than this amount, but deems this amount to be a fair compromise in light of the circumstances created by David Dreyer.

5. By accepting the terms of this Agreement, Junker agrees that his only recovery for the judgment at issue will be by and through his ownership interest in Trinity. Furthermore, in the event that Trinity now has, or later develops, sources of income other than income from the contemplated litigation against Dreyer (and, potentially, against others) who have caused Trinity to become liable to Junker in the [underlying lawsuit], Junker will not share in any such income as an owner of Trinity or otherwise.

(Settlement Agreement, Ex. 20 to Defs.' Mot. for Summ. J., at 2-3.) Junker and Trinity thereafter filed an Agreed Judgment memorializing the Settlement Agreement, and on July 7, 2009, the court entered the Agreed Judgment in favor of Junker for $150,000.00 plus pre-judgment interest of $28,063.00.

On August 27, 2009, Trinity, represented by Capron, brought the instant action against Defendants, alleging claims for legal malpractice, fraud, breach of fiduciary duty, and breach of contract. In support of these claims, Trinity alleges, *inter alia*, that Defendants "failed to advise Trinity of the need to file an answer [in the underlying lawsuit], of multiple settlement offers, of the fact of a planned mediation, of the discovery responses which were due to be filed by Trinity, of the pendency of proceedings to have Trinity sanctioned for discovery abuse, of the filing of a motion for default judgment against Trinity, of the taking of a default judgment against Trinity, of Trinity's various rights to defend the proceedings or to appeal from the first judgment, or of the other rights Trinity had in the [underlying lawsuit]." (Compl. ¶ 12.) Trinity seeks actual damages, punitive damages, costs, and attorneys fees.

Defendants seek summary judgment on all of Trinity's claims, arguing that Trinity's claims are barred as a matter of law. Trinity moves for partial summary judgment on its claims for breach of contract, legal malpractice, and the issue of causation of damages. Alternatively, if the Court determines that partial summary judgment as to causation of damages is not appropriate, Trinity seeks a determination as a matter of law that the confessed judgment in the underlying lawsuit was reasonable.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking

to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). This standard does not change when the parties file cross motions for summary judgment, as each motion is treated separately and "the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

### III. Trinity's Claims for Legal Malpractice, Fraud, and Breach of Fiduciary Duty

Defendants move for summary judgment on Trinity's claims for legal malpractice, fraud, and breach of fiduciary duty (collectively "tort claims"),[1] arguing: (1) such claims are barred because they constitute an unlawful assignment; (2) Trinity has not incurred any damages; and (3) Trinity has perpetrated a fraud upon the Court. Trinity seeks summary judgment as to its legal malpractice claim, arguing that the undisputed facts demonstrate the required elements of this claim. Because, as outlined below, the Court finds Defendants' first argument dispositive of Trinity's tort claims, it need not address the remaining arguments advanced by the parties.

---

[1] Although legal malpractice claims are based on a contract of employment, in Oklahoma, such claims are based in tort. *See Stephens v. Gen. Motors Corp.*, 905 P.2d 797, 798 (Okla. 1995) ("In Oklahoma, an action for malpractice, whether medical or legal, though based on a contract of employment, is an action in tort . . . .") (citing *Funnell v. Jones*, 737 P.2d 105, 107 (Okla. 1985)).

Under Oklahoma law, the assignment of tort claims is prohibited. *See* Okla. Stat. tit. 12, § 2017(D) ("The assignment of claims not arising out of contract is prohibited") ("Section 2017(D)").[2] While it is undisputed that there was no *actual* transfer of Trinity's tort claims to Junker, the Court finds that the Settlement Agreement results in a *de facto* transfer of such claims in violation of Section 2017(D). As evidenced by the clear language of the Settlement Agreement, Junker was assigned a fifty-percent ownership interest in Trinity, which provides him with the authority to vote on corporate matters and make decisions insofar as they pertain to this lawsuit. Specifically, Junker has the "sole decision-making authority" with respect to this lawsuit, including the choice of counsel (which, somewhat predictably, resulted in Capron's representation of Trinity). (Settlement Agreement, Ex. 20 to Def.'s Mot. for Summ. J., at 2.) Further, Junker's authority is expressly limited to this lawsuit, as he is precluded from making any other corporate decisions for Trinity. Junker's ownership interest also comes without Junker having to assume any of Trinity's existing liabilities. Thus, it is clear from the language of the Settlement Agreement that Trinity gave Junker an ownership interest for the specific and sole purpose of permitting Junker to litigate Trinity's claims against Defendants.

The Settlement Agreement also reflects the fact that Junker has control over the proceeds of this case, as such proceeds will be used by Junker to recover on the $150,000.00 confessed judgment articulated therein. (*See id*. at 3 ("[J]unker agrees that his *only* recovery for the judgment at issue will be by and through his ownership interest in Trinity.") (emphasis added).) Further, Junker is expressly prohibited from sharing in any other source of income that is potentially developed by

---

[2] This statutory provision also states that "nothing in this section shall be construed to affect the law in this state as it relates to the transfer of claims through subrogation." *Id.* This exception is not relevant to this matter.

Trinity, making this lawsuit his only means to receive money from Trinity. (*See id.*) The Settlement Agreement therefore gives Junker control over not only the claims asserted in this lawsuit, but also the proceeds derived therefrom.[3]

The case law construing Section 2017(D) is sparse, and the Court is unaware of any authority discussing *de facto* assignments under Section 2017(D). However, the absence of an explicit assignment in this case does not render Section 2017(D) inapplicable. At its core, an assignment is a transfer of rights or property from one individual to another, and this is precisely the result obtained by the Settlement Agreement. The fact that the parties did not specifically name it as such does not change reality. As reflected in the terms of the Settlement Agreement, Trinity's rights to its claims against Defendants – both in terms of bringing such claims and in recovering on such claims – have effectively been assigned to Junker. Junker, and not Trinity, holds the right to be the "sole decision-maker" with regard to Trinity's claims against Defendants, and Junker is further entitled to recover proceeds from such claims. Such an assignment permitted Junker to "trade-up" in terms of the financial wherewithal of Trinity because but for the plan orchestrated in the

---

[3] Trinity attempts to artfully dodge the terms of the Settlement Agreement by arguing that (1) Junker has not, to date, received transfer of Trinity's stock, and (2) Junker has not "endeavored to control" this litigation. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 10; Junker Aff., Ex. 26 to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 2.) The Court finds these arguments irrelevant in light of the plain terms of the Settlement Agreement. Notably, Trinity does not argue that the Settlement Agreement has in any manner been rescinded or is void for any reason. Instead, Trinity offers the somewhat curious argument that it has not followed through with its obligations under said agreement and that Junker has had no hand in this lawsuit (despite the fact that Capron, Junker's attorney in the underlying lawsuit against Trinity, is now prosecuting an action on behalf of Trinity). As outlined above, the assignment has occurred by virtue of the rights transferred to Junker via the Settlement Agreement. Trinity's arguments do not change the fact that, at the end of the day, Trinity's claims against Defendants are now Junker's and Junker is entitled to proceeds from such claims.

Settlement Agreement, Junker's chances of receiving any money from Trinity was slim. *See Zuniga v. Groce, Loke & Hebdon*, 878 S.W.2d 313, 316 (Tex. Ct. App. 1994) (noting that usual motivation in assigning malpractice claim to former adversary is the "plaintiff's inability to collect a judgment from an insolvent, uninsured (or under-insured) defendant"). The Court finds such an assignment unlawful pursuant to Section 2017(D).

Even absent the clear legislative prohibition which exists in this instance, the assignment at issue should not be permitted because it is clearly against public policy. The various dangers involved in this assignment – namely, the assignment of a legal malpractice claim to a former adversary – have been amply discussed in cases prohibiting such claims as contrary to public policy. *See, e.g., Edens Tech., LLC v. Kile Goekjian Reed & McManus, PLLC*, 675 F. Supp. 2d 75, 79-82 (D.D.C. 2009) (granting law firm defendant's motion to dismiss legal malpractice claim on public policy grounds where claim was assigned to Golf Tech, named plaintiff's former litigation adversary, and assignment gave Golf Tech right to control malpractice litigation and recover proceeds therefrom) (discussing overriding public policy concerns that render such assignments invalid, including the opportunity and incentive for collusion in stipulating to artificially inflated damages and the illogical position of lawyers and clients switching positions concerning the same incident); *Gurski v. Rosenblum and Filan, LLC*, 885 A.2d 163, 168, 175 (Conn. 2005) ("A majority of [j]urisdictions have concluded that legal malpractice claims are not assignable based on several overlapping public policy concerns.") (directing judgment for law firm defendant on legal malpractice claim because such claim was assigned to adversary in underlying litigation and contrary to public policy) (reasoning that assignment of such a claim would "convert a legal malpractice action into a commodity; undermine the sanctity of the attorney-client relationship;

8

result in decreasing the availability of legal services to insolvent clients; impact negatively on the duty of confidentiality and further the commercialization of malpractice claims that in turn would spawn an increase in unwarranted malpractice actions"); *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 342 (Ind. 1991), *abrogated on other grounds by Liggett v. Young*, 877 N.E.2d 178 (Ind. 2007) (affirming lower court's grant of summary judgment on legal malpractice claim on grounds that assignment of claim to former adversary was contrary to public policy) (concluding legal malpractice claims should not be assigned based on "particular concern about two issues: the need to preserve the sanctity of the client-lawyer relationship, and the disreputable public role reversal that would result during the trial of assigned malpractice claims"). Therefore, for the reasons outlined herein, the Court grants summary judgment as to Trinity's tort claims.

## IV. Breach of Contract Claim

Defendants move for summary judgment on Trinity's breach of contract claim, arguing that said claim is based on alleged violations of the Oklahoma Rules of Professional Conduct ("ORPC") and is therefore barred as a matter of law. The Court agrees. It is well-settled that the ORPC do not form a basis for civil liability. *See* Okla. Stat. tit. 5, App. 3-A, Scope ("Violation of a Rule should not give rise to a cause of action nor should it create a presumption that a legal duty has been breached.") ("[The ORPC] are not designed to be a basis for civil liability."). The Oklahoma Supreme Court has noted that if a breach of contract action "merely incorporates by reference or by implication a general standard of skill or care [to] which a defendant would be bound independent of the contract[,] a tort case is presented . . . ." *Great Plains Fed. Sav. and Loan Ass'n v. Dabney*, 846 P.2d 1088, 1092 (Okla. 1993); *see id.* at 1097 (further stating that "professional malpractice suits are controlled by the two-year tort limitation unless there is shown an express agreement by

9

the defendant to do more than use ordinary care in the treatment or representation of plaintiff"); *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1295-96 (N.D. Okla. 1998) (finding contract action was actually tort action because the breach alleged by plaintiff "amount[ed] to nothing other than Defendants' breach of their obligation to diligently and honestly administer [bank's] affairs") (relying on *Dabney*).

Trinity does not dispute the above-stated law, but attempts to save its breach of contract claim from melding into its tort claims by arguing that "the violations of the [ORPC] are not the only bases for the breach of contract claim, as Defendants' Motion [for Summary Judgment] presumes." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 21-22.) However, Trinity's argument stops there, as Trinity fails to identify the additional "bases for the breach of contract claim." *Id.* Further, a review of Trinity's Motion for Partial Summary Judgment clearly demonstrates that the breach of contract claim is based entirely on the ORPC. Therein, Trinity asserts that Dreyer engaged in a verbal agreement to represent Trinity, and, in so doing, incorporated each of the ORPC into the contract. (*See* Pl.'s Mot. for Partial Summ. J. 18-19.) Trinity further argues that "the afore-mentioned breaches of the [ORPC] conclusively establish the breach of the contract." (*Id.* 19.) Because Trinity fails to identify another basis for its breach of contract claim, and because the alleged incorporation of the ORPC into the verbal agreement between Trinity and Defendants "merely incorporates by reference or by implication a general standard of skill or care [to] which [Dreyer] would be bound independent of the contract," *Dabney*, 846 P.2d at 1092, Plaintiff's breach of contract claim actually sounds in tort. Such claim is therefore subject to summary judgment for those reasons outlined in Section III.

## V. Conclusion

For the reasons discussed herein, Plaintiff's Motion for Partial Summary Judgment (Doc. 44) is DENIED, and Defendants' Motion for Summary Judgment (Doc. 47) is GRANTED. The remaining pending pre-trial motions (Docs. 46, 57, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, and 101) are DENIED AS MOOT. A separate Judgment in favor of Defendants will be issued forthwith.

**IT IS SO ORDERED this 7th day of January, 2011.**

_____
**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**